## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

BRANDON FITZPATRICK,

               Plaintiff,

v.                                  CIVIL ACTION NO.  2:24-cv-00286

CORRECTIONAL OFFICER DANIEL MCKNIGHT,

               Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Correctional Officer Daniel McKnight's ("Defendant") Motion to Dismiss.  (ECF No. 10.)  For the reasons discussed herein, the motion is **DENIED**.

### *I.*     *BACKGROUND*

This matter arises out of an alleged use of force against Plaintiff Brandon Fitzpatrick ("Plaintiff"), during his incarceration at Mount Olive Correctional Complex ("MOCC").  (ECF No. 1.)  The allegations in this action are rather straightforward.  Plaintiff alleges that Defendant sprayed him with oleoresin capsicum ("OC") spray.  (*Id.* at 2.)

More specifically, Plaintiff alleges that on or about June 21, 2022, he was in a locked cage in the recreation yard at MOCC.  (*Id.*, ¶ 7.)  After all other inmates had been removed from the yard, it was time for the correctional officers' customary search of Plaintiff.  (*Id.*)  Even though

1

he had already removed his shirt and shoes, Plaintiff claims that Defendant and Correction Officer

Bowers ("C.O. Bowers") instructed him to remove his underwear.   (*Id.*)

Plaintiff asked why, as it was not common practice to remove his underwear, and no other

inmate was required to completely strip.   (*Id.*)   When he did not receive an answer, Plaintiff asked

to speak to the shift commander.   (*Id.*)   Defendant and C.O. Bowers obliged him.   (*Id.*, ¶ 8.)

While speaking to the shift commander, though, Plaintiff claims that C.O. Bowers kept

interrupting him.   (*Id.*)   So, Plaintiff told C.O. Bowers to "shut up."   (*Id.*)   Immediately,

Plaintiff alleges that Defendant sprayed him "multiple times" with OC spray without "any

warning."   (*Id.*)   As a result, Plaintiff asserts that he suffered "severe burning of his skin and

shortness of breath."   (*Id.* at 3, ¶ 10.)   Plaintiff also claims that he suffered "severe emotional

distress, humiliation, embarrassment, mental distress and loss of personal dignity" due to

Defendant's actions.   (*Id.*, ¶ 15.)

Plaintiff filed his complaint in this Court on June 11, 2024.   (*See generally id.*)   The

complaint asserts two causes of action against Defendant for his use of OC spray.   Count One is

a state-law claim for "Outrageous Conduct," and Count Two is a claim brought under 42 U.S.C. §

1983 for an alleged violation of the Eighth Amendment.   (*Id.* at 3–5.)

Defendant filed the pending Motion to Dismiss on November 12, 2024.   (ECF Nos. 10,

11.)   Plaintiff filed a response, (ECF No. 14), and Defendant filed a reply, (ECF No. 15).   As

such, this motion is fully briefed and ripe for adjudication.

## II.    *LEGAL STANDARD*

Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim

showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md.*

2

*Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). Thus, a case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.*; *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (When ruling on a motion to dismiss, courts must "accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff"); *see also Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d

1130, 1134 (4th Cir. 1993) (explaining that, "[i]n considering a motion to dismiss, the court should accept as true all well-pleaded allegations").

The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).

## III.    DISCUSSION

In the pending motion, Defendant seeks dismissal of all claims against him. (*See* ECF Nos. 10, 11.) Defendant argues that Plaintiff has failed to state a claim under both counts of the complaint. (ECF No. 11 at 4–11.) Defendant also claims that, as a matter of law, he is entitled to qualified immunity. (*Id.* at 11–14.) Each argument is addressed below.

4

### A. *Motion to Dismiss Standard*

As an initial matter, it appears that Defendant's counsel is unfamiliar the Rule 12(b)(6) standard.   (*See generally* ECF Nos. 11, 15).   Defendant discusses factual allegations that are not contained in Plaintiff's complaint, (ECF Nos. 11 at 12–13 (asserting that Plaintiff may have possessed contraband, spat on C.O. Bowers, and was creating a dangerous situation); 15 at 5 (same)), which he thinks the Court should consider in resolving the pending motion to dismiss. That is contrary to the motion to dismiss standard, set forth above.   At this juncture, Defendant does not get to inject his own facts or dispute those that are plead.   Instead, the Court will only consider and accept as true the well-plead factual allegations contained in the Complaint in resolving the pending motion to dismiss.  *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 440; *Guerrero v. Ollie's Bargain Outlet, Inc.*, 115 F.4th 349, 356 (4th Cir. 2024) ("At the pleadings stage, courts are limited to considering the four corners of the complaint and the documents attached or incorporated thereto." (citing *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015)).[1]

### B. *Failure to State a Claim*

First, Defendant argues that Plaintiff has failed to state a claim under both counts of the Complaint.   (*See* ECF No. 11.)   After applying the correct legal standard, Plaintiff has stated a plausible claim for each cause of action, which are discussed in turn below.

---

[1] With confidence, though, Defendant's reply brief asserts that *Plaintiff* applied an incorrect standard for a motion to dismiss.   (ECF No. 15 at 1–2 (arguing that "there is zero requirement that the Court assume all facts plead by Plaintiff to be true," and that Plaintiff cannot "simply assert random unsubstantiated facts" (internal quotations omitted).) While *legal conclusions* are not entitled to the assumption of truth, well-plead factual allegations are.   *Iqbal*, 556 U.S. at 678.

1.  <u>Outrageous Conduct</u>

Count One asserts a claim for "outrageous conduct," (ECF No. 1 at 3–4), which is another name for intentional infliction of emotion distress ("IIED") under West Virginia law, *see Hines v. Hills Dep't Stores, Inc.*, 454 S.E.2d 385, 389 (W. Va. 1994).   In West Virginia, there are four elements of a claim for IIED:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).   "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination."   *Id.*

The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."   *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 705 (W. Va. 1982) (quoting Restatement (Second) of Torts § 46, cmt. d); *see also Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 507 (S.D. W. Va. 2014) ("It is not enough that an actor act with tortious or even criminal intent.").   "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct," but "outrageous conduct can include physical violence that causes bodily harm and emotional distress."   *Courtney v. Courtney*, 413 S.E.2d 418, 423–24 (W. Va. 1991) (internal citations removed).   "In determining whether a defendant's conduct is 'extreme and outrageous,'" the

6

finder of fact may consider whether the conduct "arose from an abuse by the defendant of a position or relationship to the plaintiff, which gave the defendant actual or apparent authority over the plaintiff or power to affect the plaintiff's interests." *Travis*, 504 S.E.2d at 426.

In the pending motion to dismiss, Defendant challenges the first, second, and fourth elements. (*See* ECF No. 11 at 8–11.) However, as discussed below, the Complaint asserts well-plead facts that plausibly satisfy each of those elements.

As to the first element, Plaintiff asserts that Defendant sprayed him with OC spray "multiple times." (ECF No. 1 at 2, ¶ 8.) Plaintiff also claims that he was "not a threat to himself, the Defendant, or anyone else at the time he was sprayed." (*Id.*) In fact, Plaintiff was supposedly locked in a cage at the time. (*See id.*, ¶ 7.)

Conversely, Defendant argues that his conduct was not outrageous given the totality of the circumstances. (ECF No. 11 at 9 (citing *Zsigray v. Langman*, 842 S.E.2d 716, 727 (W. Va. 2020) (granting summary judgment).)[2] For support, Defendant relies on factual allegations not contained in the Complaint."[3] (*Id.*; *see also* ECF No. 15 at 3–6.) However, because these assertions are not included in the Complaint, (*see generally* ECF No. 1), the Court cannot consider them at the motion to dismiss stage, *see Guerrero*, 115 F.4th at 356 (citing *Zak*, 780 F.3d at 606).

Instead, accepting all well-plead factual allegations in the Complaint as true, it is plausible that a jury could find it "outrageous," "intolerable," "atrocious," and "beyond all possible bounds

---

[2] Counsel should know the difference in the legal standard between a motion to dismiss and a motion for summary judgment and the effect thereof. *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (4th Cir. 2018) (setting forth the differing standards between a motion to dismiss and a motion for summary judgment).
[3] Defendant also states that he had a responsibility to "ensur[e] that inmates are not permitted to smuggle weapons or illicit substances" throughout MOCC, and the "sole purpose" of Plaintiff's search was "to ensure that he was not bringing any weapons, alcohol or other illicit substances or contraband from the yard into other areas of the correctional facility." (ECF No. 11 at 8; *see also* ECF No. 15 at 4.) However, Defendant's search of Plaintiff is not the conduct at issue in this case.

7

of decency" to spray Plaintiff, who was locked in a cage and not a threat to himself or anyone else, multiple times with OC spray. *See Travis*, 504 S.E.2d at 425. This is further supported by the fact that Defendant was in a position of power over Plaintiff. *See id.* at 426. Thus, Plaintiff has sufficiently satisfied the first element.

As to the second element, Plaintiff claims that Defendant sprayed him with OC spray "without just cause." (ECF No. 1 at 3, ¶ 10.) He also claims that Defendant's use of the OC spray "without any warning" demonstrates Defendant's "malicious intent." (*Id.* at 3–4, ¶ 16.) In response, Defendant again focuses on facts not in the Complaint. (*See* ECF No. 11 at 8–9; *see generally* ECF No. 15.) Considering the well-plead factual allegations that Defendant deployed OC spray multiple times on Plaintiff, who was in a cage by himself and not a threat to himself or others, it is plausible that a reasonable jury could find that Defendant did not act with any intent other than to inflict emotional distress. *See Travis*, 504 S.E.2d at 425. Even if Plaintiff "refused a lawful order" to remove his underwear, (ECF No. 11 at 8; *see also* ECF No. 1 at 2, ¶ 7), a reasonable jury could find that Defendant acted with the requisite intent, *Twombly*, 550 U.S. at 570 (directing courts to view the well-pleaded factual allegations in the complaint in the light most favorable to the plaintiff). Thus, Plaintiff has sufficiently satisfied the second element.

As to the fourth element, Plaintiff alleges that he suffered "severe bodily injury, severe emotional distress, humiliation, embarrassment, mental distress and loss of personal dignity" as a result of Defendant's actions. (ECF No. 1 at 3, ¶ 15; *see also id.* at 4, ¶ 17.) Conversely, Defendant argues that "[s]imply pleading that [] Plaintiff suffered emotional distress which [he]

claim[s] is severe, without evidential or factual support, is not sufficient."[4]    (ECF No. 11 at 10.)
The Court disagrees.

   "Severe emotional distress includes (but is not limited to) such reactions as mental suffering and anguish, shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea."  *Travis*, 504 S.E.2d at 430.   "[I]n many cases[,] the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed."  *Id.* (quoting Restatement of Torts (Second), § 46, cmt. j (1965)).   Still, "[t]he reasonableness of the plaintiff's reaction will normally be a *jury question*."  *Id.* (internal citations omitted) (emphasis added).   The intensity and duration of the emotional distress is also *a question for the jury*.  *Id.* (emphasis added)

   To that end, Plaintiff's allegations are sufficient to meet this element for purposes of a motion to dismiss.  *See Porter v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, No. CV 3:14-26583, 2015 WL 5698514, at *4 (S.D. W. Va. Sept. 28, 2015) (Chambers, J.) (finding that a plaintiff's allegation that "he suffered severe emotional distress because he suffered physical injury and hospitalization as a result of not receiving his medication" satisfied the fourth element at the motion to dismiss stage).   At the time of the incident, Plaintiff was alone, in a cage.   (*See* ECF No. 1 at 2, ¶ 7.)   He was out in open view.   (*Id.*)   He was stripped down to nothing but his underwear.   (*Id.*)   Then, Plaintiff was allegedly sprayed multiple times with OC spray without warning or justification.   (*Id.* at ¶¶ 7–8.)   As a result, he claims that he suffered "severe bodily

---

[4]  Additionally, Defendant asserts that "[t]he personality of the individual to whom the misconduct is directed is also a factor," and suggests that Plaintiff could not have suffered severe emotional distress because being sprayed with OC spray is "not the most traumatic event that Plaintiff has experienced since he has been incarcerated."   (ECF No. 11 at 10 (citing *Franklin v. King Lincoln-Mercury-Suzuki, Inc.*, 51 F. Supp. 2d 661, 667 (D. Md. 1999).)   Beyond the fact that *Franklin* involved a motion for summary judgment, it was also decided on Maryland law.   Thus, it is not instructive or persuasive at the motion to dismiss stage on this claim based on West Virginia law.

injury, severe emotional distress, humiliation, embarrassment, mental distress and loss of personal dignity." (ECF No. 1 at 3, ¶ 15; *see also id.* at 4, ¶ 17.) Taking these well-plead allegations as true, a reasonable jury could find that Plaintiff suffered severe emotional distress.

"The tort of outrageous conduct . . . is a difficult fact pattern to prove." *Hines*, 454 S.E.2d at 390. Whether Plaintiff can *prove* his claim is yet to be determined. Nevertheless, at the motion to dismiss stage, there are sufficient allegations in the Complaint for the Court to find as a matter of law that a reasonable factfinder could conclude that Plaintiff can meet each element of an IIED claim. *See Travis*, 504 S.E.2d at 425.

Therefore, Defendant's motion is **DENIED** insofar as he seeks to have Count One dismissed for failure to state a claim.

2. <u>Eighth Amendment Excessive Force</u>

Section 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). "To maintain a § 1983 action, [the plaintiff] must show that: (1) he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) that the defendants deprived him of this right while acting under 'color of any [law].'" *Tincher v. Fink*, No. Civ. A. 2:03–0030, 2005 WL

1845319, at *3 (S.D. W. Va. Aug. 2, 2005) (Goodwin, J.) (citing *Lugar v. Edmondson Oil Co.*, 922 U.S. 930, 939 (1982)).[5]

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments."[6]   U.S. Const., amend. VIII; *see Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).   It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures."   *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation omitted).   "In the prison context, it 'protects inmates from inhumane treatment and conditions while imprisoned.'"   *Iko*, 535 F.3d at 238 (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).   "The Eighth Amendment [thus] places restraints on prison officials, who may not, for example, use excessive physical force against prisoners."   *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).   In this sense, the Amendment provides inmates a floor of constitutional protection, below which prison officials may not venture—that is, prison officials may not undertake conduct that is "unnecessary and wanton[ly] inflict[s] . . . pain."   *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

An inmate's Eighth-Amendment excessive-force claim involves both an objective and subjective component.   *See Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019).   The objective standard requires a plaintiff to establish that the force used was "non-trivial," *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), or that the force exceeded the "*de minimis*" level of physical force excluded

---

[5] Defendant does not dispute that he was acting under color of state law at the time of the alleged incident.   (*See* ECF No. 11 at 8 (stating that he "was at all relevant times engaged in his official government function as a Correctional Officer").)

[6] "The Eighth Amendment's proscription of cruel and unusual punishments is applicable to the States through the Fourteenth Amendment."   *Gordon v. Schilling*, 937 F.3d 348, 356 n.11 (4th Cir. 2019).

from constitutional recognition, *Hudson v. McMillian*, 503 U.S. 1, 10 (1992).   For the subjective component, the plaintiff must establish that the prison officials acted with a sufficiently culpable mental state.   *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014).   The state of mind required in excessive force claims is "wantonness in the infliction of pain."   *Iko*, 535 F.3d at 239 (citation omitted).

At this juncture, Plaintiff has sufficiently plead both components of an excessive force claim.   Each is discussed in turn below.

### i.   Objective Component

The objective component of an excessive force claim has a low threshold.   *See Wilkins*, 559 U.S. at 37–38.   This component does not require an inmate to prove a significant injury or even an injury that requires medical attention.   *Id.*   Rather, the objective component merely requires more than a *de minimis* use of force.   *See id.*   The Fourth Circuit has recognized that the objective component can be met by "the pain itself," even if an inmate has no "enduring injury." *Norman v. Taylor,* 25 F.3d 1259, 1263 n. 4 (4th Cir.1994) (en banc), *cert. denied,* 513 U.S. 1114 (1995).   Thus, Plaintiff has sufficiently plead this objective component by alleging that Defendant's force caused "severe burning of his skin and shortness of breath."   (ECF No. 1 at 3, ¶ 10; *see also Tedder v. Johnson*, 527 F. App'x 269, 274 (4th Cir. 2013) (finding that a prisoner's adverse reaction, including "gagging, breathing difficulty, and vomiting" established that the use of pepper spray was "nontrivial").)

### ii.   Subjective Component

To satisfy the subjective component of this test, the plaintiff must show that the officials applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a

12

good faith effort to maintain or restore discipline." *Whitley*, 475 U.S. at 320–21; *see also Boone*, 583 F. App'x at 176. In *Whitley*, the Court outlined multiple factors to consider in determining whether the force satisfies the subjective component of the test: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of . . . [any] reasonably perceived" threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." 475 U.S. at 320–21.

In analyzing these factors, the Fourth Circuit has repeatedly held that an allegation that a prison official deployed pepper spray on a docile prisoner stated a sufficient Eighth-Amendment excessive-force claim. *See Iko*, 535 F.3d at 239-40 (4th Cir. 2008); *Boone*, 583 Fed. Appx. at 176 ("[o]ur precedent establishes that the use of pepper spray on a docile prisoner could qualify as excessive force"); *see also Benjamin*, 77 F.3d at 763 ("[I]t is a violation of the Eighth Amendment for prison officials to use mace, tear gas, *or other chemical agents* in quantities greater than necessary or for the sole purpose of infliction of pain." (emphasis added).). Officers may use pepper spray in limited quantities "to prevent riots and escapes or to control a recalcitrant inmate" without violating the Eighth Amendment. *Benjamin*, 77 F.3d at 763. However, these chemical agents are inherently dangerous, and their use should be "closely scrutinized." *Id.* Thus, using chemical agents in quantities greater than necessary, or for the sole purpose of inflicting pain, constitutes malicious behavior and satisfies the subjective component of an Eighth Amendment violation. *Id.*

Here, Plaintiff has sufficiently plead the subjective component. As discussed above, Plaintiff alleges that that Defendant sprayed him with OC spray, multiple times, without warning or justification. (ECF No. 1 at 2, ¶¶ 7–8.) Again, Defendant argues that Plaintiff has failed to

state a claim "[g]iven the factual circumstances of the incident," based on factual allegations not contained in the Complaint. (ECF No. 11 at 6; *see also* ECF No. 15 at 5–6.) However, the factual allegations contained in the complaint state a plausible excessive force claim by asserting that Defendant sprayed him with OC spray without justification. *See Jones*, 984 F.3d at 302. Even if Plaintiff "refused a lawful order" to remove his underwear, (ECF No. 11 at 5; *see also* ECF No. 1 at 2, ¶ 7), it is still plausible that Defendant used greater force than necessary when he deployed CO spray multiple times on Plaintiff, who was locked in a cage by himself, *see Benjamin*, 77 F.3d at 763.

Therefore, Defendant's motion is **DENIED** insofar as he seeks to have Plaintiff's § 1983 claim dismissed for failure to state a claim.

### C. *Qualified Immunity*

Defendant further argues that he is protected by qualified immunity against the Plaintiff's federal and state-law claims. (ECF Nos. 11 at 11–14; 15 at 6–9.) The Court disagrees.

1. Section 1983

As discussed above, Section 1983 subjects to civil liability any person who, acting under color of state law, deprives an individual of his or her constitutional or federal rights. Government officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect officers in the performance of discretionary functions unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).

14

Thus, the court must undertake a two-part inquiry: (1) viewing the facts in the light most favorable to the Plaintiff, the court must determine if there was a constitutional violation; and (2) if so, whether the right violated was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also State v. Chase Sec.*, 424 S.E.2d 591, 600 (W. Va. 1992) (stating that West Virginia's "immunity test is designed to parallel the Supreme Court's standard of qualified immunity for public officials in Section 1983 actions because in such actions we cannot extend a broader immunity"). "Courts have discretion to decide the order in which to engage [the] two prongs" of the qualified-immunity analysis. *Tolan v. Cotton*, 572 U.S. 650, 656, (2014) (citing *Pearson*, 555 U.S. at 236).

For a right to be clearly established, "'[t]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan*, 572 U.S. at 656 (alterations in original) (quoting *Hope*, 536 U.S. at 741); *see also West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014) ("The law is clearly established if 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011))). "Existing precedent must have placed the statutory or constitutional question beyond debate." *West*, 771 F.3d at 213 (citation omitted). "Courts 'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit] [C]ourt of [A]ppeals, and the highest court of the state in which the case arose.'" *Id.* (quoting *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012)).

As discussed above, in light of Plaintiff's well-pleaded factual allegations, a reasonable jury could find that the Defendant's conduct violated the Eighth Amendment by spraying Plaintiff

15

with OC spray without justification.   Further, the Fourth Circuit "held . . . decade[s] ago that it is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas *or other chemical agents in quantities greater than necessary* or for the sole purpose of infliction of pain."   *Iko*, 535 F.3d at 240 (internal quotations and citations omitted).   Thus, Defendant is not entitled to qualified immunity on Plaintiff's excessive force claim.

   2.   Outrageous Conduct

   Federal courts apply a state's qualified-immunity doctrine to claims arising under state law. *See Pegg v. Herrnberger*, 845 F.3d 112, 121 (4th Cir. 2017).   Under West Virginia law, "[t]o determine whether the State, its agencies, officials, and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions . . . involve . . . discretionary governmental functions."   *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 766 (W. Va. 2014).

   If the acts or omissions involve discretionary governmental functions, a reviewing court must "determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive."[7]   *A.B.*, 766 S.E.2d at 766.   "In absence of such a showing, both the State and its officials or employees charged with such acts or

---

[7] Defendant argues that he is entitled to qualified immunity unless Plaintiff can show that he "engaged in conduct which could be characterized as fraudulent, malicious, or oppressive," (ECF No. 15 at 7), but evidently forgot that he is not entitled to qualified immunity if his act was "in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known," *A.B.*, 766 S.E.2d at 766, even though he quoted the entire rule in the immediately preceding sentence.

omissions are immune from liability." *Id.*   If the plaintiff demonstrates the violation of a clearly established right or law, the employee is not immune from liability.   *Id.* at 767.

As discussed above, Plaintiff has asserted a plausible violation of a clearly established constitutional right.   This conduct is the predicate of Plaintiff's outrageous conduct claim.   (*See* ECF No. 1 at 3–4.)   Consequently, regardless of whether Defendant was acting in a discretionary function, (*see* ECF Nos. 11 at 13; 14 at 8), he is not entitled to qualified immunity, *A.B.*, 766 S.E.2d at 767.   Thus, Defendant is not entitled to qualified immunity on Plaintiff's state-law claim for outrageous conduct.

Therefore, Defendant's motion is **DENIED** insofar as he seeks to assert qualified immunity.

## IV.    CONCLUSION

For these reasons, Defendant's Motion to Dismiss, (ECF No. 10), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    July 3, 2025

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE