**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**


BRANDON FITZPATRICK,

                Plaintiff,

v.                                CIVIL ACTION NO.   2:24-cv-00286

CORRECTIONAL OFFICER DANIEL MCKNIGHT,

                Defendant.


**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Correctional Officer Daniel McKnight's ("Defendant") Motion for Summary Judgment.   (ECF No. 34.)   For the reasons discussed herein, the motion is **GRANTED**.

## *I.*    *BACKGROUND*

This matter arises out of an alleged use of force against Plaintiff Brandon Fitzpatrick ("Plaintiff"), during his incarceration at Mount Olive Correctional Complex ("MOCC").   (ECF No. 1.)   The allegations in this action are rather straightforward.   Plaintiff alleges that Defendant sprayed him with oleoresin capsicum ("O.C.") spray.   (*Id.* at 2.)

More specifically, Plaintiff alleges that on or about June 21, 2022, he was in a locked cage in the recreation yard at MOCC.   (*Id.*, ¶ 7.)   After all other inmates had been removed from the yard, it was time for the correctional officers' customary search of Plaintiff.   (*Id.*)   Even though

he had already removed his shirt and shoes, Plaintiff claims that Defendant and Correction Officer Bowers ("C.O. Bowers") instructed him to remove his underwear.   (*Id.*)

The parties' recollections diverge at this point.   Plaintiff claims that he asked why he had to remove his boxers, as it was not common practice to remove his underwear and no other inmate was required to completely strip, but Defendant and C.O. Bowers did not answer him.   (*Id.*) Consequently, Plaintiff allegedly asked to speak to the shift commander.   (*Id.*)

However, Defendant contends that he and C.O. Bowers made this request because they suspected that Plaintiff was intoxicated and noticed "an object that appeared to be bottles in [Plaintiff]'s . . . boxers."   (ECF No. 34-1 at 177; *see also id.* at 180, 189, 191, 193, 333.) Defendant and C.O. Bowers asked Plaintiff "what he had" in his boxers and explained that Plaintiff needed to remove his boxers to complete the unclothed body search.   (ECF No. 34-1 at 177; *see also id.* at 180, 189, 191, 193, 333.)   Then, Plaintiff accused Defendant and C.O. Bowers of being "on some bullshit" and stated that they could get a team to remove him from the yard.   (ECF No. 34-1 at 177; *see also id.* at 180, 189, 191, 193.)

The parties agree that Defendant and C.O. Bowers called their shift manager to the yard. (ECF No. 1 at 2, ¶ 8; *see also* ECF No. 34-1 at 177, 180, 189, 191, 193, 333.)   While speaking to the shift commander, Plaintiff claims that C.O. Bowers kept interrupting him.   (ECF No. 1 at 2, ¶ 8.)   So, Plaintiff told C.O. Bowers to "shut up."   (*Id.*)   Immediately, Plaintiff alleges that Defendant sprayed him "multiple times" with O.C. spray without "any warning."   (*Id.*)   As a result, Plaintiff asserts that he suffered "severe burning of his skin and shortness of breath."   (*Id.* at 3, ¶ 10.)   Plaintiff also claims that he suffered "severe emotional distress, humiliation,

embarrassment, mental distress and loss of personal dignity" due to Defendant's actions.   (*Id.*, ¶ 15.)

Conversely, Defendant claims that "Plaintiff became combative, refused to comply with directives, and spat on" Defendant and his supervisor.   (ECF No. 35 at 3; *see also* ECF No. 34-1 at 99–100, ¶¶ 19–21, 6–7; *id.* at 173–183, 187, 193, 200–204, 333.)   Then, Defendant sprayed Plaintiff with O.C. spray.   (*See generally id.*)   Afterwards, both Defendant and his supervisor were transported to the hospital "to have blood work conducted to determine whether any communicable diseases or ailments had been transmitted by Plaintiff's spit."   (ECF No. 34-1 at 43, ¶ 12; *see also id.* at 175, 187.)

Plaintiff filed his complaint in this Court on June 11, 2024.   (*See* ECF No. 1.)   The complaint asserts two causes of action against Defendant for his use of O.C. spray.   Count One is a state-law claim for "Outrageous Conduct," and Count Two is a claim brought under 42 U.S.C. § 1983 for an alleged violation of the Eighth Amendment.   (*Id.* at 3–5.)

Defendant filed the pending Motion for Summary Judgment on November 4, 2025.   (ECF Nos. 34, 35.)   Plaintiff filed a response, (ECF No. 36), and Defendant filed a reply, (ECF No. 37).   As such, this motion is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment.   It states, in pertinent part, that a court should grant summary judgment if "there is no genuine issue as to any material fact."   "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."   *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570,

576 (4th Cir. 2010).   Summary judgment should not be granted if there are factual issues that reasonably may be resolved in favor of either party.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."   *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

The nonmoving party bears the burden of showing there is a "genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence[.]'"   *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).   When ruling on a motion for summary judgment, the Court must view the evidence "in the light most favorable to the opposing party."   *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## III.    DISCUSSION

In the pending motion, Defendant seeks dismissal of both claims against him.   (*See* ECF Nos. 34, 35.)   Defendant argues that the record, taken as a whole, cannot lead a rational trier of fact to find in favor of Plaintiff on either claim.   (*See id.*)   Defendant also claims that, as a matter of law, he is entitled to qualified immunity.   (*Id.* at 11–14.)   Each argument is addressed below.

### A.  Outrageous Conduct

Count One asserts a claim for "outrageous conduct," (ECF No. 1 at 3–4), which is another name for intentional infliction of emotion distress ("IIED") under West Virginia law, *see Hines v. Hills Dep't Stores, Inc.*, 454 S.E.2d 385, 389 (W. Va. 1994).   In West Virginia, there are four elements of a claim for IIED:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with

the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).   "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination."   *Id*.

The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."   *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 705 (W. Va. 1982) (quoting Restatement (Second) of Torts § 46, cmt. d); *see also Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 507 (S.D. W. Va. 2014) ("It is not enough that an actor act with tortious or even criminal intent.").   "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct," but "outrageous conduct can include physical violence that causes bodily harm and emotional distress."   *Courtney v. Courtney*, 413 S.E.2d 418, 423–24 (W. Va. 1991) (internal citations removed).   "In determining whether a defendant's conduct is 'extreme and outrageous,'" the finder of fact may consider whether the conduct "arose from an abuse by the defendant of a position or relationship to the plaintiff, which gave the defendant actual or apparent authority over the plaintiff or power to affect the plaintiff's interests."   *Travis*, 504 S.E.2d at 426.   Undoubtedly, "[t]he tort of outrageous conduct . . . is a difficult fact pattern to prove."   *Hines*, 454 S.E.2d at 390.

5

Here, Defendant appears to challenge the first element. (*See* ECF No. 35 at 6–9.) Defendant argues that the O.C. spray, which was "the lowest level of physical force available," was utilized after he and other officers "went to extraordinary lengths to try and gain compliance" from Plaintiff. (*Id.* at 8.) Even then, Defendant claims to have only deployed O.C. spray to prevent Plaintiff from continuing to spit on him and his supervisor. (*See id.* at 8–9.) In fact, Defendant offers an Expert Report, which found that his deployment of O.C. spray was the correct use of force in this situation under West Virginia Division of Corrections and Rehabilitation policy. (*See* ECF No. 34-1 299–314.) Given the totality of the circumstances, Defendant asserts that a reasonable and rational trier of fact could not find that his use of O.C. spray was outrageous. (*See* ECF No. 35 at 9.)

In response, Plaintiff relies on his own testimony in denying that he spat on officers.[1] (*See* ECF No. 36 at 3–5; *see also* ECF No. 36-1 at 29, ¶¶ 8-14; *id.* at 47, ¶¶ 15-19; *id.* at 50, ¶¶ 3-5.) He also argues that "[t]he facts asserted by Defendant cannot be taken as true when there is no video" evidence for support. (*Id.* at 4.) He further challenges Defendant's Expert Report because it "is entirely based on the assumption that Plaintiff spit on the defendants." (*Id.* at 5.) Thus, Plaintiff insists that there is a genuine issue of material fact as to whether he spat on Defendant and his supervisor. (*Id.*)

It is true that whether Defendant spat on correctional officers is a material fact. *See Anderson*, 477 U.S. at 248 (explaining that a fact is material if it "might affect the outcome of the

---

[1] Plaintiff also relies on the allegations in the Complaint, (see ECF No. 36 at 3 – 4), which his counsel should know are not accepted as true at the summary judgment stage, *see Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (4th Cir. 2018) (setting forth the differing standards between a motion to dismiss and a motion for summary judgment); *see also Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989) (explaining that conclusory denials, without more, are insufficient to withstand summary judgment).

suit under the governing law").   However, this dispute is not "genuine" because a reasonable jury could not return a verdict for Plaintiff.   *See id.*   Rather, Defendant has produced his own testimony, official reports from numerous officers that were completed on the date of the incident, and an affidavit from C.O. Bowers, which all stated that Plaintiff spat on Defendant and his supervisor.   (*See* generally ECF No. 34-1.)   By comparison, Plaintiff's testimony that he did not spit on Defendant or his supervisor constitutes a "mere existence of a scintilla of evidence" in support of his position, which is "insufficient" to create a genuine issue of material fact.   *See Anderson*, 477 U.S. at 252.   Indeed, the evidence is "so one-sided" that Defendant prevails as a matter of law.   *See id.* at 251–52 (explaining that the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").[2]

The result does not change despite the lack of video evidence.   (*Cf.* ECF No. 36 at 4.) Federal Rule of Civil Procedure 56 provides that a party may support their position with various materials, including, *inter alia*, depositions, documents, and affidavits.   Fed. R. Civ. P. 56(c)(1)(A).   Nothing in Rule 56 requires a party to support its evidentiary materials with video footage.   *See* Fed. R. Civ. P. 56.   Further, as Defendant notes, the absence of video evidence does not negate the numerous sources of evidence presented in this case.   (*See* ECF No. 37 at 4.)

At bottom, multiple officers consistently reported that Plaintiff spat on Defendant and his supervisor.   Plaintiff's plain denial of such, alone, is insufficient to create a genuine issue of material fact.   Therefore, no reasonable jury could find that Defendant's use of O.C. spray was outrageous.

---

[2] This is true even if the Court does not consider Defendant's proffered Expert Report that Plaintiff challenges.

Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to Count One.

### B. Eighth Amendment Excessive Force

Section 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). "To maintain a § 1983 action, [the plaintiff] must show that: (1) he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) that the defendants deprived him of this right while acting under 'color of any [law].'" *Tincher v. Fink*, No. Civ. A. 2:03–0030, 2005 WL 1845319, at *3 (S.D. W. Va. Aug. 2, 2005) (Goodwin, J.) (citing *Lugar v. Edmondson Oil Co.*, 922 U.S. 930, 939 (1982)).[3]

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments."[4]    U.S. Const., amend. VIII; *see Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).    It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures."    *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation omitted).    "In the prison context, it 'protects inmates from inhumane

---

[3] Defendant does not dispute that he was acting under color of state law at the time of the alleged incident.    (*See* ECF No. 11 at 8 (stating that he "was at all relevant times engaged in his official government function as a Correctional Officer").)

[4] "The Eighth Amendment's proscription of cruel and unusual punishments is applicable to the States through the Fourteenth Amendment."    *Gordon v. Schilling*, 937 F.3d 348, 356 n.11 (4th Cir. 2019).

treatment and conditions while imprisoned.'" *Iko*, 535 F.3d at 238 (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "The Eighth Amendment [thus] places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). In this sense, the Amendment provides inmates a floor of constitutional protection, below which prison officials may not venture—that is, prison officials may not undertake conduct that is "unnecessary and wanton[ly] inflict[s] . . . pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

An inmate's Eighth-Amendment excessive-force claim involves both an objective and subjective component.[5] *See Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). For the subjective component, the plaintiff must establish that the prison officials acted with a sufficiently culpable mental state. *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014). The state of mind required in excessive force claims is "wantonness in the infliction of pain." *Iko*, 535 F.3d at 239 (citation omitted).

To satisfy the subjective component of this test, the plaintiff must show that the officials applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley*, 475 U.S. at 320–21; *see also Boone*, 583 F. App'x at 176. In *Whitley*, the Court outlined multiple factors to consider in determining whether the force satisfies the subjective component of the test: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the

---

[5] In this case, Defendant only challenges the subjective component. (*See* ECF No. 35 at 11–13.)

extent of . . . [any] reasonably perceived" threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."   475 U.S. at 320–21.

Here, Defendant argues that an application of the *Whitley* factors would not permit a trier of fact to conclude that Defendant had a sufficiently culpable mental state.   (ECF No. 35 at 11.) Rather, Defendant claims that the evidence shows that he "utilized O.C. spray in a good faith effort to restore order and end Plaintiff's assault against himself and corrections staff."   (*Id.*)   Plaintiff only rebuts the first factor, (*see* ECF No. 36), but each factor is discussed in turn below.

First, Defendant argues that the evidence indicates that the use of O.C. spray was necessary because Plaintiff was spitting on the officers.   (*See* ECF No. 35 at 11.)   While Plaintiff maintains that he did not spit on officers, (ECF No. 36 at 6), the overwhelming majority of evidence indicates otherwise, as discussed above.   Thus, this factor weighs in favor of Defendant.

Second, Defendant reasons that the amount of force used was proportionate to the need because de-escalation techniques had failed and, "given Plaintiff's position, only the deployment of O.C. spray could reach Plaintiff" and stop him from spitting on Defendant and his supervisor. (*See* ECF No. 35 at 12 (also stating that "[r]easoned conversation with Plaintiff resulted in a significant escalation, including Plaintiff's use of biological material to assault" Defendant and his supervisor).)   Because Plaintiff was contained in a locked cage, Defendant could not otherwise quickly stop him from spitting on officers.   Thus, this factor weighs in favor of Defendant.

Third, Defendant claims that he was attempting to quell the reasonably perceived threat of "additional biological assaults against the other corrections staff."   (ECF No. 35 at 12 (also noting that his "use of O.C. spray came in response to an active and direct physical assault, albeit through the recreation yard's cage").)   This argument is especially persuasive given that Defendant and

10

his supervisor had to be transported to the hospital to get tested for pathogens after getting spat on. (ECF No. 34-1 at 43, ¶ 12; *see also id.* at 175, 187.)   Thus, this factor weighs in favor of Defendant.

Fourth, Defendant states that efforts were made to temper the use of the O.C. spray, as Defendant deployed a "minimally restrictive, temporary, and non-lethal" amount of O.C. spray. (ECF No. 35 at 13.)   Additionally, the Court notes that efforts were made to temper the use of the O.C. spray *after* deployment when officers engaged in "the decontamination process of Plaintiff including the provision of cool water at the water basin located on the recreation yard, treatment by Nursing Staff members, . . . the provision of an additional shower in the infirmary shower, and Plaintiff's subsequent placement into medical observation for intoxication."   (*See id.* at 3 (internal citations omitted).)   Thus, this factor weighs in favor of Defendant.

The Court is aware of the clear legal precedent[6] that "the use of pepper spray on a docile prisoner could qualify as excessive force."   *Boone*, 583 Fed. Appx. at 176; *see also Iko v. Shreve*, 535 F.3d at 239-40 (4th Cir. 2008); *Benjamin*, 77 F.3d at 763 ("[I]t is a violation of the Eighth Amendment for prison officials to use mace, tear gas, or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.").   However, the record indicates that Plaintiff was not "docile," *cf. id.*, and officers may use pepper spray in limited quantities "to control a recalcitrant inmate" without violating the Eighth Amendment, *Benjamin*, 77 F.3d at 763.   Thus, after "closely scutiniz[ing]" Defendant's usage of O.C. spray, *see id.*, the Court finds that no reasonable jury could conclude that Defendant acted maliciously.

---

[6] In what appears to be a last-ditch effort, Plaintiff broadly cites to *Iko* without any analysis, (ECF No. 36 at 7), and again reiterates that the allegations in his complaint meet "any standard" and encompass "all of the essential elements" need to prevail on his claims, (*id.* at 8–9).   Yet, this proclamation files in the face of the summary judgment standard.

11

Accordingly, Defendant's motion is **GRANTED** as to Count Two.

### *C.  CONCLUSION*

For these reasons, Defendant's Motion for Summary Judgment, (ECF No. 34), is

**GRANTED**.   The Clerk is **DIRECTED** to remove this matter from the Court's active docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

ENTER:      February 12, 2026

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE